**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EDGAR NUÑEZ-FUENTES,

    Defendant-Appellant.

No. 05-3422

District of Kansas

(D.C. No. 05-CV-3197-MLB)

**ORDER**[*]

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

Edgar Nuñez-Fuentes, a federal prisoner proceeding *pro se*, seeks a certificate of appealability (COA) that would allow him to appeal the district court's order denying his habeas corpus petition under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c)(1)(B). Because we conclude that Mr. Nuñez-Fuentes has failed to make "a substantial showing of the denial of a constitutional right," we **DENY** his request for a COA and dismiss the appeal. 28 U.S.C. § 2253(c)(2).

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

## I. Background

Mr. Nuñez-Fuentes pleaded guilty to felony conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In his plea agreement, Mr. Nuñez-Fuentes waived his right to appeal and to collaterally attack his conviction and sentence, including motions brought under 28 U.S.C. § 2255, except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). The district court accepted the plea and sentenced him to 135 months' imprisonment, to be followed by five years of supervised release. Judgment was entered on August 16, 2004. Pursuant to the plea agreement, Mr. Nuñez-Fuentes did not file a direct appeal.

On April 6, 2005, Mr. Nuñez-Fuentes filed a motion to vacate the judgment of the district court under 28 U.S.C. § 2255, claiming ineffective assistance of counsel and challenging the validity of the plea agreement. In his petition, Mr. Nuñez-Fuentes argued that his plea agreement was the result of ineffective assistance of counsel because counsel (1) allowed the plea agreement to be based on a different quantity of drugs than was originally included in the indictment, and failed to object to an alleged miscalculation of the base offense level; (2) failed to request downward departures based on the defendant's extraordinary family circumstances; (3) allowed for the inclusion of a five-year period of supervised release in the plea agreement even though, according to Mr. Nuñez-Fuentes, the district court had no jurisdiction to impose supervised release; and

(4) failed to secure "safety valve" credit for which Mr. Nuñez-Fuentes was eligible under U.S.S.G. § 5C1.2. The district court rejected each of Mr. Nuñez-Fuentes's arguments and denied the motion. Mr. Nuñez-Fuentes then filed an application for a COA in this Court. Because Mr. Nuñez-Fuentes's' ineffective assistance claim challenges the validity of his plea, it falls outside the waiver of post-conviction rights in the plea agreement. *See Cockerham*, 237 F.3d at 1187.

**II.**

The denial of a motion for relief under § 2255 may be appealed only if the district court or this Court first issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). In order to make such a showing, a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted).

In order to establish an ineffective assistance claim sufficient to warrant reversal of a conviction or a sentence, a convicted defendant must show both that counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness, and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The ultimate

question, according to the Supreme Court, is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id*. at 686.

**A. *Discrepancy Between the Indictment and the Plea Agreement***

Mr. Nuñez-Fuentes first argues that his counsel was ineffective because the plea agreement was based on a higher quantity of drugs than was specified by the indictment. The indictment charged him with conspiracy to distribute "approximately two (2) pounds" of methamphetamine, R. Doc. 23, p. 1, whereas the plea agreement and the petition to plead guilty both specified 1,183, or roughly 2.6 pounds, of a mixture or substance containing a detectable amount of methamphetamine. In a sentencing regime where Guideline ranges may vary dramatically on the basis of a few grams of narcotics, such a discrepancy could, in some cases, have a significant effect on a defendant's sentence. In this case, however, the base offense level would have been the same whether the plea agreement was based on 1,183 grams or two pounds (approximately 907 grams) of methamphetamine. *See* U.S.S.G. 2D1.1(c)(2) (specifying a base offense level of 36 for offenses involving "at least 500 grams but less than 1.5 kilograms of methamphetamine (actual)."). Thus, Mr. Nuñez-Fuentes has not made a substantial showing that the discrepancy between the indictment and the plea agreement had a prejudicial effect on his sentence.

Mr. Nuñez-Fuentes also argues that his base offense level should have been 32 rather than 36, based on the quantity of the methamphetamine involved in his offense. This calculation stems from a misreading of the Guidelines. Under Note B to U.S.S.G. § 2D1.1(c), courts are instructed to "use the offense level determined by the entire weight of the mixture or substance [containing methamphetamine], or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." According to the record, the 1,183 grams of methamphetamine involved in the defendant's case was of 70% purity. Therefore the actual quantity in the plea agreement was approximately 828 grams, and the actual quantity charged in the indictment was approximately 635 grams, both of which fall well within the range for a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2). Thus, Mr. Nuñez-Fuentes's counsel could not have been ineffective for failing to object to the court's calculation of the base offense level.

**B.** *Extraordinary Family Circumstances*

Mr. Nuñez-Fuentes also claims that his counsel was ineffective because she failed to request downward departures for which he was eligible due to his "extraordinary family circumstances" and because of his pending deportation. The district court found that Mr. Nuñez-Fuentes's family circumstances fall well below the "extraordinary" threshold that would entitle him to a downward departure, and we find nothing in the record suggesting otherwise.

Mr. Nuñez-Fuentes relies primarily on a case from the Eastern District of Wisconsin, which he interprets as holding that when a defendant's family resides in the United States, and he will be deported following his release from prison, he is entitled to a three-level downward departure. *See United States v. Ferreria*, 239 F. Supp. 2d 849, 852 (E.D. Wis. 2002). We do not interpret *Ferreria* as adopting such a per se rule. The decision merely shows one possible outcome for such a case in the Seventh Circuit, where district courts are free to consider a downward departure if a defendant suffers "unusual or exceptional hardship in his conditions of confinement" as a result of his status as a deportable alien. *United States v. Farouil*, 124 F.3d 838, 847 (7th Cir. 1997). The Seventh Circuit's case law does not support the rule that sentencing courts must award departures every time the defendant is a deportable alien. *See United States v. Gallo-Vasquez*, 284 F.3d 780, 785 (7th Cir. 2002). Unlike the Seventh Circuit, this Court has not decided whether a defendant's status as a deportable alien may justify a departure when it creates an unusual or exceptional hardship in the conditions of a defendant's confinement. Even if it had, Mr. Nuñez-Fuentes has failed to establish any such hardship. Accordingly, his counsel was not ineffective for failing to seek a downward departure on that basis.

**C. *Supervised Release***

Mr. Nuñez-Fuentes also argues that his counsel was ineffective because she allowed the plea agreement to include a five-year term of supervised release,

which he claims the district court lacked jurisdiction to impose. This argument, however, is contradicted by the language of 21 U.S.C. § 841(b)(1)(A), which not only authorizes but requires the district court to impose a five-year term of supervised release in this case. Contrary to Mr. Nuñez-Fuentes's elaborate theory concerning a sequence of amendments to the statute during the mid-1980's, the codification at 21 U.S.C. § 841(b)(1) is an accurate rendition of the relevant portion of the Anti-Drug Abuse Act of 1986, § 1002, Pub. L. No. 99-570, 100 Stat. 3207 (enacted October 1986). Thus, Mr. Nuñez-Fuentes has failed to make a substantial showing that his counsel was ineffective with respect to the inclusion of supervised release in the plea agreement.

## D. *"Safety Valve" Credit*

Finally, we turn to Mr. Nuñez-Fuentes's claim that counsel was ineffective for failing to secure "safety valve" sentence credit under U.S.S.G. § 5C1.2. The district court found that the defendant was not eligible for credit, based on information from a case agent's affidavit and an assistant U.S. attorney's statement that Mr. Nuñez-Fuentes had not been truthful during his debriefing with government agents. Out of "an abundance of caution," the court allowed Mr. Nuñez-Fuentes to respond to the affidavit, which detailed a number of inconsistencies in his statements to the government. We have reviewed the record, including Mr. Nuñez-Fuentes's response to the affidavit, and we agree with the district court that the defendant did not adequately account for his untruthful

-7-

statements, especially with respect to his statements regarding the methamphetamine and heroin. As the district court observed, Mr. Nuñez-Fuentes's "response essentially is that his failure to tell the truth just was not important." R. Doc. 98, at 3. Thus, as with the other claims of ineffective assistance, we hold that Mr. Nuñez-Fuentes has failed to make a substantial showing that his counsel's performance was constitutionally deficient.

Accordingly, we **DENY** Edgar Nuñez-Fuentes's request for a COA and **DISMISS** this appeal.

Entered for the Court,

Michael W. McConnell
Circuit Judge